**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

PANAGIOTIS THEODOROU,          :

    Petitioner,                             :

vs.                                                    :        CA 07-0134-WS-C

ALBERTO GONZALES, etc.,        :
et al.,
                                               :
    Respondents.

**REPORT AND RECOMMENDATION**

Panagiotis Theodorou, a native and citizen of Greece ordered removed from the United States and presently being detained by the United States Department of Homeland Security, has petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2241.[1] This matter has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C.

---

[1] While petitioner is no longer in the actual and present physical custody of David O. Streiff, Warden of the Perry County Correctional Center in Uniontown, Alabama, *see Rumsfeld v. Padilla*, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."), he was confined in the Perry County Correctional Center when he filed the instant action and, therefore, this Court retains jurisdiction to decide this matter, *see Patel v. United States Attorney General*, 334 F.3d 1259, 1263 (11th Cir. 2003) ("Habeas jurisdiction requires that the petitioner be in 'custody.' 'Custody' is determined as of the time of the filing of the petition.").

§ 636(b)(1)(B) and Local Rule 72.1(c). It is recommended that the instant petition be dismissed, without prejudice to being filed at a later date in the correct court, because Theodorou has prematurely filed the present attack upon his post-removal-period detention.

### **FINDINGS OF FACT**

1.  Theodorou is a native and citizen of Greece who entered the United States on September 24, 1978 as a non-immigrant visitor for pleasure. (Doc. 13, Notice to Appear, at 3; *see also* Doc. 1, at 5) His status was adjusted to that of lawful permanent resident on October 29, 1984. (Doc. 13, Notice to Appear, at 3; *see also* Doc. 1, at 1)

2.  On May 25, 1988, petitioner was found guilty by a jury *in absentia* of criminal possession of a weapon in the third-degree and menacing. (Doc. 1, Exhibit B) On July 26, 1988, in the Supreme Court of New York, Queens County, Theodorou was sentenced, *in absentia*, to an indeterminate term of imprisonment on the weapons charge. (*Id.*) On or about December 23, 2002, Theodorou was arrested by state authorities and his sentence was executed. (Doc. 1, Exhibit C)

3.  The Department of Homeland Security lodged an Immigration Detainer against Theodorou on May 24, 2004 (Doc. 1, Exhibit D) and placed

petitioner into removal proceedings by the issuance of a Notice to Appear dated June 25, 2004 (Doc. 13, Notice to Appear). Petitioner was notified that his third-degree criminal possession of a pistol conviction made him deportable. (*See id.*)

4.     On July 6, 2005, Immigration Judge Joe D. Miller ordered Theodorou removed from the United States and returned to his native Greece. (Doc. 13, ORDER OF THE IMMIGRATION JUDGE)  Theodorou's application for cancellation of removal under § 240A(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a), was denied, as were his applications for deferral of removal under Article III of the Convention Against Torture and waiver of admissibility under section 212(c) of the Immigration and Nationality Act. (*See id.*)

5.     Theodorou timely appealed the Immigration Judge's July 6, 2005 decision to the Board of Immigration Appeals. (*See* Doc. 13, Decision of the Board of Immigration Appeals) On November 21, 2005, the Board of Immigration Appeals issued its decision affirming the Immigration Judge's determination and dismissing the appeal. (*See id.*)

> The respondent was arrested for criminal possession of a weapon in the third degree in the State of New York on July 16, 1987. He was convicted after a jury trial during which he absconded, and was sentenced in absentia (Exhs. 3, 5). The term

of sentence was 2⅓ to 7 years imprisonment (Tr. at 73). However, this sentence was not executed until 2002, when the respondent was located (Tr. at 78-79). The respondent argues that he should be able to waive this conviction, and that it should not be considered a conviction subsequent to the enactment of AEDPA and IIRIRA.

First, we note that the Immigration Judge pretermitted the respondent's application for a waiver of inadmissibility under former section 212(c) of the Act, concluding that the respondent was unable to seek a waiver where the section was repealed, and where there was a trial, not a plea (I.J. at 11). We agree. Moreover, we agree with the point raised by the Department of Homeland Security ("DHS") earlier in these proceedings, to wit, that the respondent may not seek *either* a 212(c) or 212(h) waiver where there is no corresponding ground of inadmissibility for a firearms offense such as the respondent's.

Next, we find that the respondent's applications for asylum; withholding of removal, and CAT were properly pretermitted by the Immigration Judge. The respondent failed to raise these avenues of relief until the merits hearing on his cancellation application had nearly concluded (Tr. at 136-37). Nevertheless, the Immigration Judge gave the respondent 30 days to submit an application for CAT relief only (Tr. at 137-139). The respondent failed to submit the application on time (Tr. at 141-42; 150-151). We affirm the Immigration Judge's conclusion to deem the CAT application abandoned where the respondent only raised it as an avenue at the precipice of the hearing's conclusion, and then failed to timely file upon being given the opportunity to do so.

As for claimed Immigration Judge bias, we reject the respondent's arguments, as the Immigration Judge's comments reflect at best [] frustration with respondent's interruptive behavior over the course of the merits hearing, but not an overt bias (Tr. at 18-19, 39, 64, 76, 128, 135, 143, 147). Indeed, at one point the Immigration Judge stopped and rescheduled

proceedings where the respondent stated he was ill (Tr. at 36-37). Moreover, the Immigration Judge afforded the respondent a month to file an application for relief that appeared to be grounded more in a desperation to delay proceedings than a claim of merit (Tr. at 136-39). Therefore, we reject this aspect of respondent's appeal. As for the respondent's claim of ineffective assistance of counsel, he has failed to comply with the necessary steps to proffer such a claim.

Finally, we turn now to the application considered by the Immigration Judge on the merits, to wit, cancellation of removal under section 240A of the Act, 8 U.S.C. § 1229b. Relief under section 240A(a) of the Act, 8 U.S.C. § 1229b(a), is available to an alien lawfully admitted for permanent residence for not less than 5 years, who has resided in the United States continuously for 7 years after having been admitted in any status and has not been convicted of any aggravated felony. We agree with the Immigration Judge that the respondent is statutorily eligible for cancellation of removal under section 240A(a) of the Act, based on his length of residence as a lawful permanent resident and the fact that he does not appear to have been convicted of an aggravated felony.

However, relief under this section is discretionary. The alien bears the burden of demonstrating that he deserves such relief as a matter of discretion. The exercise of discretion in a particular case necessarily requires consideration of all the facts and circumstances involved. There must be a balancing of the social and humane considerations presented in an alien's favor against the adverse factors evidencing his undesirability as a permanent resident.

Favorable considerations include family ties in the United States, residence of long duration here (especially when the inception of residence occurred at a young age), evidence of hardship to the respondent and his family if deportation occurs, service in this country's armed forces, a history of employment, the existence of property or business ties, evidence of value and

5

service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to the respondent's good character.

Negative factors include the nature and circumstances of the grounds of removal which the respondent is charged, the existence of a criminal record, and the presence of other evidence which might indicate an undesirability to allow an alien to remain a permanent resident of the United States. As these negative factors grow more serious, the respondent must introduce additional offsetting evidence which in some cases may have to involve "unusual or outstanding equities." Such a showing may be mandated because of a single serious crime, or because of a succession of criminal acts which together establish a pattern of serious criminal misconduct. A cancellation applicant under section 240A(a) of the Act is not required to meet a threshold test requiring a demonstration of unusual or outstanding equities before favorable and adverse factors are weighed to determine whether cancellation is warranted in the exercise of discretion. Rather, there is a balancing of positive, favorable equities against negative, detrimental liabilities.

When reviewing determinations made by the Immigration Judge on such applications as these, we bear in mind our standard of review. Despite the respondent's arguments on appeal, we find no clear factual error committed by the Immigration Judge, nor do we differ in any legal conclusion reached by the Immigration Judge. The respondent's criminal weapons-related conviction is a significant negative equity, particularly where his sentence was so lengthy. The Immigration Judge did not find that the respondent had been rehabilitated, a factual finding where we find no clear error. Moreover, that the respondent's answers below were not found compelling by the Immigration Judge is also not clear error (Tr. at 63-66; 78-81). We affirm the Immigration Judge's conclusion that none of the respondent's answers in regard to his positive equities is such that they overcome the negative aspects of his application (I.J. at 9-11).

(*Id.* (internal citations and footnotes omitted))

6. Theodorou filed a petition for review in the Second Circuit Court of Appeals on December 28, 2005, and a motion for stay of removal on January 20, 2006. (Doc. 13, General Docket Sheet, U.S. Court of Appeals for the Second Circuit)

7. On May 5, 2006, Theodorou signed papers for his release on parole; however, instead of being released from the facility in which he was incarcerated he was taken to that facility's Special Housing Unit to await his transfer to ICE custody. (Doc. 1, at 7) Petitioner was taken into ICE custody on May 16, 2006. (*Id.*)

8. On July 17, 2006, Theodorou's motion for stay of removal was granted by the Second Circuit Court of Appeals. (Doc. 13, General Docket Sheet ) "Upon due consideration, it is ORDERED that the motions are GRANTED, because the petition presents 'an arguable basis in law or fact,' Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989), and because petitioner could suffer irreparable harm absent a stay, see Mohammed v. Reno, 309 F.3d 95, 100 (2nd Cir. 2002)." (*Id.*)

9. Theodorou filed his petition seeking habeas corpus relief,

7

pursuant to 28 U.S.C. § 2241, in this Court on February 22, 2007. (Doc. 1) The Second Circuit's docket sheet entry for July 2, 2007 reflects that Theodorou's case in that court will be ready for a ruling during the week of October 15, 2007. (Doc. 13, General Docket Sheet)

## CONCLUSIONS OF LAW

1.  In *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001), the Supreme Court determined that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."

2.  The Supreme Court, in *Zadvydas*, held that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689, 121 S.Ct. at 2498.

3.  8 U.S.C. § 1231 reads, in relevant part, as follows:

**(a) Detention, release, and removal of aliens ordered removed**

    **(1) Removal period**

        **(A) In general**

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

**(B)   Beginning of period**

The removal period begins on the **latest** of the following:

**(i)**   The date the order of removal becomes administratively final.

**(ii)**   If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

**(iii)**   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

**(C)   Suspension of period**

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

**(2)   Detention**

During the removal period, the Attorney General

> shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

*Id.* (emphasis supplied). The Supreme Court in *Zadvydas* concluded that six months represents a presumptively reasonable period of time to detain a removable alien awaiting deportation pursuant to the provisions of this statute. 533 U.S. at 701, 121 S.Ct. at 2505 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does

not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."); *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

    4.    In *Akinwale*, the Eleventh Circuit determined that the six-month detention period recognized by the Supreme Court "must have expired" at the time a petitioner's § 2241 petition is filed "in order to state a claim under *Zadvydas*." 287 F.3d at 1052; *see also id.* ("[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."). The *Akinwale* court also indicated that the running of the six-month detention period can be interrupted or tolled by the alien moving for a stay of deportation/removal and any subsequent action of the appropriate circuit court in granting such motion. *See id.*, n.4 ("Akinwale was taken into custody on November 17, 1999, and interrupted the running of time under *Zadvydas* by moving on December 3, 1999, for a stay of deportation in his prior appeal to

11

this Court. The stay was granted on January 10, 2000. . . . Akinwale subsequently filed the § 2241 petition in this case on March 21, 2000. Thus, Akinwale, unlike the aliens in *Zadvydas*, chose to simultaneously challenge issues related to his removal order and his post-removal period detention. . . . Therefore, Akinwale did not have even an unencumbered month of detention prior to filing his § 2241 petition, let alone the requisite six months.").

     5.    In this case, Theodorou has filed his § 2241 petition prematurely. Though petitioner's filing date in the instant action, February 22, 2007 (Doc. 1), obviously came more than six months after the date upon which his removal became administratively final on November 21, 2005, he interrupted the running of the time under *Zadvydas* by moving, on January 20, 2006, for a stay of deportation. Therefore, in accordance with *Zadvydas* and *Akinwale*, Theodorou has had, at most, a two month period of detention prior to the filing of his § 2241 petition that can be counted toward the six-month post-removal-period of detention recognized as presumptively reasonable by the Supreme Court. In other words, the six-month period has not yet expired; thus, petitioner has not stated a claim for relief under 28 U.S.C. § 2241 and *Zadvydas*.

## **CONCLUSION**

For these reasons, the undersigned recommends that this Court dismiss, without prejudice, Panagiotis Theodorou's habeas corpus petition filed pursuant to 28 U.S.C. § 2241. Theodorou's petition has been prematurely filed under 8 U.S.C. § 1231. The dismissal is without prejudice to petitioner's ability to file a new § 2241 petition in the future when he is able to state a claim under *Zadvydas*.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 22nd day of August, 2007.

   s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                                  s/WILLIAM E. CASSADY
                                                                  UNITED STATES MAGISTRATE JUDGE